## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mayo Foundation for Medical Education
and Research and Mayo Clinic,

                                        Plaintiffs,

                                                      Civ. No. 06-5059 (RHK/JSM)
                                                      **MEMORANDUM OPINION
                                                      AND ORDER**

v.

United States of America,

                                        Defendant.

Thomas W. Tinkham, John W. Windhorst, Jr., Christopher R. Duggan, Kristina W. Carlson, Emily L. Fitzgerald, Dorsey & Whitney LLP, Minneapolis, Minnesota, Robert M. Moore, Jr., Joanne L. Martin, Mayo Clinic, Rochester, Minnesota, for Plaintiffs.

Michael R. Pahl, Trial Attorney, Tax Division, United States Department of Justice, Washington, D.C., for Defendant.

## INTRODUCTION

Plaintiffs Mayo Foundation for Medical Education and Research ("MFMER") and Mayo Clinic ("Mayo") commenced this action against Defendant United States of America for the refund of FICA taxes withheld and paid on Mayo's medical residents' stipends during the second quarter of 2005. The amount of Mayo's claim is $1,676,118.06, plus interest. This Court held in 2003 that stipends paid to medical residents in 1994-1996 qualify for the "student" exclusion from FICA taxation and that

Mayo is a "school, college, or university" for purposes of the exclusion.[1]  The IRS amended its regulations in 2004 (effective April 1, 2005) and, as a result, medical residents no longer qualify for the exclusion.  Mayo now moves for summary judgment. For the reasons set forth below, the Court will grant Mayo's Motion on the basis that the amended regulations are invalid.

## BACKGROUND

### I.      Plaintiffs MFMER and Mayo

Plaintiffs MFMER and Mayo are nonprofit corporations organized in Minnesota with their principal places of business in Rochester, Minnesota.  (Pls.' Mem. at 2.) MFMER is the agent of Mayo for purposes of withholding and remitting FICA taxes and filing related tax returns.  (Pls.' Mem. at 2.)  MFMER filed the tax return and the refund claim involved in this case.  (Id.)

Mayo operates graduate medical education programs for medical residents and fellows ("residents").[2]  Most of these programs are formally reviewed and approved by national accreditation bodies.  (Id.)  Residents are enrolled in the programs, register for

---

[1] United States v. Mayo Found. for Med. Educ. & Research, 282 F. Supp. 2d 997 (D. Minn. 2003) ("Mayo I"), appeal dismissed by stipulation (8th Cir. File No 03-3662, Jan. 7, 2004).  In 2006, this Court entered judgment dismissing a tax refund case related to stipends paid to residents at Mayo for the period of 1997-2003, pursuant to the parties' stipulation that the residents' stipends were similarly excluded from FICA tax coverage during those years.  See Mayo Found. for Med. Educ. & Research v. United States (D. Minn. Civ. No. 05-467, judgment entered May 5, 2006).

[2] A "resident" is an individual who has earned a Doctor of Medicine ("M.D.") degree and is participating in a residency program for additional medical training in a specialty field, such as internal medicine or surgery.  A "fellow" is an individual who participates in a subspecialty program that offers more specialized training beyond what is learned in the residency program. Mayo I, 282 F. Supp. 2d at 999 n.1.

courses, attend lectures, perform research, and participate in "teaching rounds" and patient care.  (Id.)

Residents also receive grades or written evaluations for their performance in each course and may be terminated from the programs for failing to satisfy academic standards.  (Id.)  Mayo pays a stipend to the residents for the purpose of providing a minimum level of financial support during their enrollment.  (Id. at 3.)  Finally, residents receive formal certification upon completion of the programs.  (Id.)

## II.    An Overview of the FICA Tax

The Federal Insurance Contributions Act ("FICA") imposes taxes upon employers and employees for the support of the social security system.  See 26 U.S.C. § 3101 et seq. FICA taxes must be paid on "wages."  Id.  FICA defines "wages" as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash."  26 U.S.C. § 3121(a).  Employers collect FICA taxes by withholding the required amount from their employees' wages.  See 26 U.S.C. § 3102(a). Employers also pay FICA contributions that equal the amount withheld from their employees' wages.  See 26 U.S.C. § 3111(a).  "Thus, FICA taxes are 'paid in part by employees through withholding, and in part by employers through an excise tax.'" Ahmed v. United States, 147 F.3d 791, 794 (8th Cir. 1998) (quoting United States v. Lee, 455 U.S. 252, 254 n.1 (1982)).

FICA excludes several categories of "service" from "employment," including "service performed in the employ of . . . a school, college, or university . . . if such

service is performed by a student who is enrolled and regularly attending classes at such

school, college, or university."  26 U.S.C. § 3121(b)(10).

### III.   Amended Regulations

In February 2004, the Internal Revenue Service ("IRS") published a Notice of

Proposed Rulemaking to amend its regulations governing the definition of "school,

college, or university" and "student" for purposes of the student-FICA exception under

26 U.S.C. § 3121(b)(10).  See Student FICA Exception, 69 Fed. Reg. 8604-8606

(proposed Feb. 25, 2004) (codified at 26 C.F.R. § 31.3121(b)(10)-2(c),(d)).  The IRS

explained that the proposed amendments were designed to address whether services

performed as "on-the-job training" are excluded from employment under the student-

FICA exception.  Id.  In particular, the IRS acknowledged that the Eighth Circuit

addressed this issue with respect to medical residents in Minnesota v. Apfel, 151 F.3d

742 (8th Cir. 1998).  See 69 Fed. Reg. at 8605.  In Apfel, the Eighth Circuit concluded

that services performed by medical residents at the University of Minnesota did not

constitute employment for social security purposes.  Apfel, 151. F.3d at 745, 748.

The IRS also explained that the proposed amendments were designed to address

whether an organization carrying on both noneducational and educational activities is a

"school, college, or university" within the meaning of section 3121(b)(10).  See 69 Fed.

Reg. at 8605-06.  The IRS indicated that it disagreed with this Court's holding in Mayo I

that Mayo is a "school, college, or university" for purposes of the exclusion.  Id.  In

Mayo I, this Court rejected the Government's argument that the "primary purpose" of an

organization determines whether the organization is a "school, college, or university" for

purposes of the student-FICA exception.  Mayo I, 282 F. Supp. 2d at 1013.  The Court

reasoned that the IRS "opt[ed] instead for a simple and straightforward statement that the

term 'school, college, or university' should be taken in its commonly and generally

accepted sense."  Id.  Nonetheless, the IRS stated that the proposed amendments would

incorporate the "primary function" standard in the regulations.  69 Fed. Reg. at 8605-06.

On December 21, 2004, the IRS published its final amended regulations, which

became effective for services performed on or after April 1, 2005.

### A.   Definition of "School, College, or University"

The amended regulations provide that:

 [a]n organization is a school, college, or university within the meaning of section
 3121(b)(10) if its *primary function* is the presentation of formal instruction, it
 normally maintains a regular faculty and curriculum, and it normally has a
 regularly enrolled body of students in attendance at the place where its educational
 activities are regularly carried on.  See section 170(b)(1)(A)(ii) and the regulations
 thereunder.

26 C.F.R. § 31.3121(b)(10)-2(c) (emphasis added).

By comparison, the pre-amended regulations provided that "[t]he term 'school,

college, or university' within the meaning of this exception is to be taken in its commonly

or generally accepted sense."  26 C.F.R. § 31.3121(b)(10)-2(d) (Pre-4/1/05 Regulations).

### B.   Definition of "Student"

The amended regulations provide that student status ("General Rule") is

determined by "the relationship of the employee with the organization employing

the employee."  26 C.F.R. § 31.3121(b)(10)-2(d).  In particular, an employee is a student

if the services he or she provides are "incident to and for the purpose of pursuing a course

of study." 26 C.F.R. § 31.3121(b)(10)-2(d)(3)(i).  In addition, "[t]he educational aspect of the relationship between the employer and the employee, as compared to the service aspect of the relationship, must be predominant in order for the employee's services to be incident to and for the purpose of pursuing a course of study."  Id.  The "educational" and "service" aspects of the relationship are based "on all the relevant facts and circumstances."  Id.

The educational aspect of the relationship is generally evaluated based on the employee's "course workload" relative to the "full-time" course workload at the school, college, or university.  26 C.F.R. § 31.3121(b)(10)-2(d)(3)(iv).  The service aspect is evaluated based on the employee's normal work schedule, number of hours worked, whether the employee is a "professional" or a "licensed professional," and whether the employee is eligible to receive certain kinds of employment benefits.  26 C.F.R. § 31.3121(b)(10)-2(d)(3)(v).

**C.      Full-time Employee Exception**

The amended regulations provide that "an employee whose normal work schedule is 40 hours or more per week is considered a full-time employee" and therefore services performed by that individual are "not incident to and for the purpose of pursuing a course of study."  26 C.F.R. § 31.3121(b)(10)-2(d)(3)(iii).  Also, an employee's "normal work schedule" is "not affected by the fact that the services performed by the employee may have an educational, instructional, or training aspect."  Id.  Consequently, a medical resident who works 40 or more hours per week does not qualify for the student exclusion from FICA taxation.

In contrast, the pre-amended regulations provided that student status shall be determined "on the basis of the relationship of such employee with the organization for which the services are performed."  26 C.F.R. § 31.3121(b)(10)-2(c) (Pre-4/1/05 Regulations).  Thus, "[a]n employee who perform[ed] services in the employ of a school, college, or university, as an incident to and for the purpose of pursuing a course of study" was a student.  Id.  The pre-amended regulations did not have a full-time employee exception.

## IV.   Mayo's Refund Claim

Mayo withheld and paid FICA taxes on the stipends it paid to the residents for services performed on or after April 1, 2005.  Thereafter, Mayo timely filed a refund claim with the IRS for $1,676,118.06.  The IRS did not act upon the claim and Mayo filed this action.  See 26 U.S.C. § 6532.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116

(8th Cir. 1997).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

## I.     Invalidity of Amended Regulations

Mayo argues that the amended regulations are invalid and conflict with the regulations from the Social Security Administration (Counts One, Four, and Five).  Mayo also argues that the Government is barred by collateral estoppel from re-litigating whether Mayo is a "school, college, or university" for purposes of the FICA-tax exclusion and whether medical residents qualify for the "student" exclusion (Counts Two, Three, Six, and Seven).  Because the Court finds that the amended regulations are invalid, it is not necessary to address the collateral-estoppel issue or whether the amended regulations conflict with the regulations from the Social Security Administration.

### A.     Secretary's Authority to Issue Regulations

The Secretary of the Treasury may issue two types of regulations:  (1) a "legislative" regulation pursuant to a specific delegation from Congress; or (2) an "interpretive" regulation pursuant to the general authority vested in the Secretary under section 7805(a) of the Internal Revenue Code.  See Tutor-Saliba Corp. v. Comm'r, 115 T.C. 1, 7 (2000).

Here, the parties agree that the amended regulations are interpretive.  The Secretary has a broad delegation of general authority from Congress to "prescribe all

8

needful rules and regulations for the enforcement of [the Internal Revenue Code]." 26

U.S.C. 7805(a); accord United States v. Correll, 389 U.S. 299, 306-07 (1967). However,

the delegated authority is not limitless, as "[t]he Secretary's authority to issue regulations

is not the power to make law; it is the power to carry into effect the will of Congress as

expressed in the statute under which the regulations are prescribed." Swallows Holding,

Ltd. v. Comm'r, 126 T.C. 96, 129 (2006) (citing Manhattan Gen. Equip. Co. v. Comm'r,

297 U.S. 129, 134-35 (1936)).

### B.      Review of an Interpretive Tax Regulation

This Court's review of an interpretive tax regulation is governed by the standards

set forth in National Muffler Dealers Ass'n, Inc. v. United States, 440 U.S. 472 (1979).

In National Muffler, the Supreme Court held that an interpretive regulation is valid if it

"implement[s] the congressional mandate in some reasonable manner." Id. at 476

(citation and internal quotations omitted). An interpretive tax regulation is reasonable

only if it "harmonizes with the plain language of the statute, its origin, and its purpose."

Id. at 477. The Supreme Court has listed the following factors for determining the

validity of an interpretive regulation:

(1)      A regulation may have particular force if it is a substantially
contemporaneous construction of the statute by those presumed to
have been aware of congressional intent.

(2)      If the regulation dates from a later period, the manner in which it
evolved merits inquiry.

(3)      Other relevant considerations are the length of time the regulation
has been in effect, the reliance placed on it, the consistency of the
Commissioner's interpretation, and the degree of scrutiny Congress

> has devoted to the regulation during subsequent re-enactments of the statute.

Id. Thereafter, the Supreme Court in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), explained that a court is confronted with two issues when reviewing an agency's construction of a statute that it administers. First, the court must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 843-44. If, however, the court determines that "Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 844.

Mayo argues that this Court's review of the amended regulations is governed by National Muffler, because that case, unlike Chevron, dealt with an interpretive tax regulation. However, the Government argues that Chevron is the proper standard. There is no indication that the standard in National Muffler was changed by Chevron. Regardless, the Court reaches the same conclusion under either standard.

## C.     The "Primary Function" Test is Invalid (Count 4)

The Court first addresses whether the plain meaning of the term "school, college, or university" includes a "primary function" test under section 3121(b)(10). See

Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself.  Absent a clearly express legislative intention to the contrary, that language must ordinarily be regarded as conclusive.").

As a threshold matter, section 3121(b)(10) (the "Student Exclusion") excludes several categories of "service" from "employment," including "service performed in the employ of . . . a school, college, or university . . . if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university."  26 U.S.C. § 3121(b)(10).  The Government argues that the statutory language of the Student Exclusion is ambiguous.[3]

The Court finds that this provision is not complicated or filled with technical language, but is straightforward.  See Mayo I, 282 F. Supp. 2d at 1007, 1013 (finding that the language of 26 U.S.C. § 3121(b)(10) is unambiguous); see also United States v. Mount Sinai Med. Ctr. of Fla., Inc., 486 F.3d 1248, 1251 (11th Cir. 2007) (holding "that the statutory language of 26 U.S.C. § 3121(b)(10) is not ambiguous.").

---

[3] The Government's memorandum, cites in a footnote, United States v. Detroit Medical Center, No. 05-71722, 2006 WL 3497312, at *9 (E.D. Mich. Dec. 1, 2006), for support that the language of the Student Exclusion is ambiguous.  (Def's. Mem. at 3 n.8.)  The Government asserted at oral argument that this Court in Mayo I implicitly found the Student Exclusion to be ambiguous because it looked to the Treasury Regulations for guidance.  (Tr. 19-20.)  However, in Mayo I, this Court expressly determined that the Student Exclusion was not ambiguous and cited to an extensive factual record as to why Mayo is a "school, college, or university" for purposes of the exclusion and why medical residents qualify for the "student" exclusion from FICA taxation.  Mayo I, 282 F. Supp. 2d at 1007,1013-18.  The Government's argument that this Court implicitly found the Student Exclusion ambiguous is quite puzzling when it expressly determined that it was not.

Mayo argues the ordinary definition of "school, college, or university" under the Student Exclusion is not ambiguous and therefore the amended regulations' use of the "primary function" standard to define "school, college, or university" is contrary to the plain meaning of the statute.  (Pls.' Mem. at 14-15.)  The Government argues that the statute does not define the term "school, college, or university" and therefore the language of the statute is ambiguous.  (Def.'s Mem. at 20.)  As such, the Government asserts that the "primary function" test helps define whether an organization is a "school, college, or university."  (Id.)

Mayo provided the Court with dictionary definitions for the terms "school," "college," and "university," such as the following:  (a) School: "an establishment for teaching a particular skill or group of skills"; (b) College: "an institution offering instruction [usually] in a professional, vocational, or technical field"; and (c) University: "an institution of higher learning providing facilities for teaching and research and authorized to grant academic degrees."  See Webster's New Int'l Dictionary 2031, 445, 2502 (3d ed. 1981).  Mayo argues that these definitions do not state or imply that education must be the "primary function" for an organization to qualify as a "school, college, or university."  The Government argues that Mayo's use of a dictionary demonstrates the term's ambiguity and points out that an earlier edition of Webster's dictionary defined school as broadly as "[a]ny place or means of learning or discipline; as, the school of experience" and as narrowly as "[a] faculty or institution for specialized higher education, usually within a university; as, a medical or law school; a school of

education."   See Webster's New Int'l Dictionary 2236 (2d ed. 1935).  The Court is not

persuaded by the Government's argument.

Here, neither of the Government's proffered definitions would exclude Mayo as a

school, college, or university, nor would they suggest that there is a meaning that

excludes an institution based upon its primary function.  Thus, the Government has no

basis to argue from the statute or from the dictionary definitions of these words that there

is an ambiguity that supports the Government's atypical definition.  A natural reading of

the full text in which the term "school, college, or university" appears demonstrates that it

is not ambiguous, but is commonly and generally understood.  Indeed, the term "school,

college, or university" has existed with clarity in the statute for over 60 years.

Accordingly, the Court finds that the term "school, college, or university" is not

ambiguous, but has a well-defined meaning and common usage outside the framework of

the Student Exclusion.  The Court recognizes that words in a revenue act generally are

interpreted in their "ordinary, everyday senses."  Comm'r v. Soliman, 506 U.S. 168, 174

(1993) (quoting Malat v. Riddell, 383 U.S. 569, 571 (1966) (quoting Crane v. Comm'r

331 U.S. 1, 6 (1947))); see also Helvering v. Horst, 311 U.S. 112, 118 (1940) ("Common

understanding and experience are the touchstones for the interpretation of revenue

laws.").  Whether an organization qualifies as a "school, college, or university" is a

factual inquiry.  The Government has presented no compelling argument that the

language in the Student Exclusion has any meaning other than its natural and plain

meaning.

The Court next considers the factors set forth in <u>National Muffler</u>:  (1) whether the regulation is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent; (2) the manner in which a regulation dating from a later period evolved; (3) the length of time that the regulation has been in effect; (4) the reliance placed upon the regulation; (5) the consistency of the Secretary's interpretation; and (6) the degree of scrutiny Congress has devoted to the regulation during subsequent reenactments of the statute.  <u>National Muffler</u>, 440 U.S. at 477.

 First, the Student Exclusion was enacted in 1939, and the amended regulations incorporating the "primary function" test were issued in 2004, 65 years later.[4]  Thus, the disputed regulations are not a "substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent."  <u>Id.</u>

Next, the Court inquires into the manner in which the disputed regulations evolved.  The amended regulations were issued only after this Court rejected the "primary function" test.  <u>Mayo I</u>, 282 F. Supp. 2d at 1013.  In <u>Mayo I</u>, the Court determined that "[a]ctual care in the service of patients is inherent in the educational process . . . [and] [b]ecause the objective of the resident programs is to ultimately make physicians capable of caring for patients twenty-four hours a day and seven days a week,

---

[4] The original treasury regulation under the Student Exclusion was adopted in 1940 and did not include any reference to a "primary function" test; it remained basically unchanged until the amended regulations were adopted in 2004.  <u>See</u> 5 Fed. Reg. 773, 785-786 (1940).  This regulation was carried over and recodified when the 1954 Code was enacted.  21 Fed. Reg. 1011, 1027 (1956).

it is impossible to separate 'education' from 'patient care.'" Id. at 1014-15.  The Court

concluded that the "primary function" test did not apply because the plain meaning of the

Student Exclusion was unambiguous.[5]  Id. at 1007, 1013.

The Government also argues that the Treasury's promulgation of the amended

regulations in response to this Court's decision in Mayo I was permissible under National

Cable & Telecommunications Ass'n v. Brand X Internet Services, 545 U.S. 967 (2005).[6]

In Brand X, the Supreme Court held that "[a] court's prior judicial construction of a

statute trumps an agency construction otherwise entitled to Chevron deference only if the

prior court decision holds that its construction follows from the unambiguous terms of the

statute and thus leaves no room for agency discretion." Id. at 982.   The Court stated that

"[o]nly a judicial precedent holding that the statute unambiguously forecloses the

agency's interpretation, and therefore contains no gap for the agency to fill, displaces a

conflicting agency construction." Id. at 982-83.  The Supreme Court concluded that the

statutory term "offering" was ambiguous (based on conflicting dictionary definitions) and

looked to the legislative history in concluding that the agency's interpretation of the

statute was reasonable.  Id. at 989-93.

Here, this Court held in Mayo I that the language of the Student Exclusion was

unambiguous.  Mayo I, 282 F. Supp. 2d at 1007, 1013.  This Court did not look past the

[5] The Court further held that even if a "primary function" test applied, Mayo satisfied that test
because it is a "non-profit institution having as its charitable purposes medical education and
scientific research.  [Mayo] operates five medical schools and . . . spends more on medical
education and research than it receives from patient care."  Mayo I, 282 F. Supp. 2d at 1013 n.30.

[6] It is not clear whether the Supreme Court's decision in Brand X, which neither cited National
Muffler nor involved an interpretive tax regulation, applies to federal tax regulations; this Court
does not decide that question.

plain language of the statute because "when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms."  Hartford Underwriters, Inc. v. Union Planters Bank, 530 U.S. 1, 6 (2000) (citations and internal quotations omitted).   The language of the Student Exclusion is clear; if Congress desires to use the "primary function" test as the standard for defining "school, college, or university" then Congress will have to make that change.  See CBS Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217, 1228 (11th Cir. 2001) ("[I]f Congress really meant in § 1005(a)(2)(B)(iii) of the Improvement Act to grandfather only involuntary terminations resulting from court orders, then why did it say 'any termination'? Why not simply say 'any involuntary termination' or 'any termination resulting from court orders'? It could have easily done so, but it did not.").

Furthermore, the amended regulations have only been in effect for approximately two years.  Thus, it is unlikely that any party has substantially relied upon them.  Also, the "primary function" test is inconsistent with the long-standing interpretation of the Student Exclusion by the IRS.[7]   Finally, Congress has not amended the Student Exclusion since the amended regulations were adopted and therefore has not had an opportunity to scrutinize them.

---

[7] The Student Exclusion was enacted in 1939 and the IRS never indicated that the "primary function" test should be applied in defining "school, college, or university" until 2001, when the IRS released a "chief counsel advice" memorandum taking that position.  See IRS CCA 200145040 (Nov. 9, 2001).

For these reasons, the Court finds that the "primary function" test is inconsistent with the plain meaning of the statute and is invalid.  Accordingly, the Court grants Mayo's request for summary judgment on Count Four of its Complaint.

**D.     The Full-Time Employee Exception is Invalid (Count One)**

Mayo also argues that the full-time employee exception is invalid because it is inconsistent with the plain meaning of the statute and is arbitrary, capricious, and unreasonable.  In particular, Mayo argues that the definition of "student" is clear and unambiguous.  The Government, however, asserts that the definition of "student" is ambiguous and argues that the term "student" is so general that a rule categorically denying student status to a full-time employee is a permissible and reasonable interpretation.[8]

The amended regulations provide that an employee is a student if the services he or she performs are "incident to and for the purpose of pursuing a course of study" at the employer organization and the educational aspect of the relationship between the employer and employee predominates over the service aspect of the relationship.  26 C.F.R. § 31.3121(b)(10)-2(d)(3)(i).  However, "an employee whose normal work schedule is 40 hours or more per week is considered a full-time employee" and therefore

---

[8] The Government also argues that a bright-line rule is necessary to address whether services in the nature of on-job-training qualify for the student-FICA exception.  (Def.'s Mem. at 28.)  The Court disagrees.  The Government's characterization of a residency program as "on-the-job" training misses the mark and ignores the fact that residents apply to and enroll in a residency program for an educational purpose.  See Mayo I, 282 F. Supp. 2d at 1017.  Indeed, Mayo's residency program provides a formal and structured educational program where residents register for courses, attend lectures, perform research, and participate in "teaching rounds" and patient care.  (Nelson Aff. ¶ 3.)

the services of a full-time employee are "not incident to and for the purpose of pursuing a course of study."  26 C.F.R. § 31.3121(b)(10)-2(d)(3)(iii).

The Court finds that the term "student" is not ambiguous.  The word "student" is well defined and commonly understood outside the context of the Student Exclusion. The dictionary defines "student" as an individual who engages in "study" and is "enrolled in a class or course in a school, college, or university." Webster's New Int'l Dictionary 2268 (3d ed. 1981); see also Oxford Universal Dictionary 2049-50 (3d ed. 1955) (a "student" is an individual who engages in "study" by applying the mind "to the acquisition of learning, whether by means of books, observation, or experiment").  A natural reading of the full text in which the term "student" appears demonstrates that an employee is a "student" so long as the educational aspect of his service predominates over the service aspect of the relationship with his employer.  The statutory language of the Student Exclusion excludes from employment "service performed in the employ of a school, college, or university . . . if such service is performed by a student who is *enrolled and regularly attending classes* at such school, college, or university."  26 U.S.C. § 3121(b)(10) (emphasis added).  Thus, Congress already put its limitations on the word "student" – those limitations only require a student to be enrolled and regularly attending classes.  Congress did not put any limitation on "student" with regard to how much that individual might be working in some ancillary capacity.

The full-time employee exception arbitrarily narrows this definition by providing that a "full-time" employee is not a "student" even if the educational aspect of an employee's service predominates over the service aspect.  Accordingly, the Court finds

that the full-time employee exception is inconsistent with the plain meaning of the statute and the expressed intent of Congress.[9]  The Court also finds that the regulatory distinction between the General Rule for determining student status and the full-time employee exception ignores the educational aspect of student services (no matter how central to the program in which the student is enrolled) merely because the services are performed by an individual who works more than 40 hours per week.  Indeed, it denies "student" status to medical residents even though the services they provide are primarily for educational purposes and essential to becoming fully qualified physicians.  The Government has failed to show that Congress intended to ignore the educational value of such services in applying the Student Exclusion.  Accordingly, the Court determines that the full-time employee exception of the amended regulations is invalid because it arbitrarily restricts the ordinary meaning of "student."

The factors set forth in <u>National Muffler</u> also indicate that the full-time employee exception is invalid.  First, the exception is not a "substantially contemporaneous construction" of the Student Exclusion because this amended regulation was added 65 years after the Student Exclusion was enacted.

Second, the exception was adopted only after adverse decisions from the Eighth Circuit and this Court.  In <u>Mayo I</u>, this Court stated that the student-status test is comparable to the implementing regulation the Eighth Circuit considered in <u>Apfel</u>, which

---

[9] "[I]t is not reasonable for the Secretary (or anyone else for that matter) to construe a statute's unambiguous meaning in a manner contrary to that intended by Congress in passing the legislation."  <u>Swallows Holding</u>, 126 T.C. at 147.

held that the proper analysis requires "a case-by-case examination" to determine whether the residents' relationship with the organization was "*primarily for educational purposes or primarily to earn a living*." Apfel, 151 F.3d at 748 (emphasis added).  In Mayo I, this Court found that the residents were clearly enrolled in a residency program and were regularly attending classes.[10]  Mayo I, 282 F. Supp. 2d at 1015-17.  The Court concluded that the residents' relationship with Mayo was primarily for educational purposes.  Id. at 1018.  In addition, the decisions in Apfel and Mayo I rejected the Government's argument that courts should defer to a "bright-line" rule that medical residents can never be exempted from FICA taxation as students.[11]  Id. at 1007.  Yet, that is exactly what the full-time employee exception does.

Third, this exception has only been in effect for two years, and it is unlikely that any party has substantially relied upon it.  Furthermore, the full-time employee exception is inconsistent with the IRS's long-standing interpretation of the Student Exclusion, which has applied a facts-and-circumstances approach and not a bright-line rule that

---

[10] The record in Mayo I showed that the "residency programs included (1) core curriculum conferences, (2) primary care conferences, (3) grand rounds, (4) morbidity and mortality conferences, and (5) journal clubs . . . . Attendance at the conferences and teaching rounds was mandatory . . . and the residents' performance in each subject matter rotation was evaluated, graded, and recorded on the residents' transcripts."  Mayo I, 282 F. Supp. 2d at 1016-17.

[11] See also Mount Sinai, 486 F.3d at 1252-53 (rejecting Government's assertion that courts should defer to a "bright-line" rule that medical residents can never qualify for the FICA exemption as students); Ctr. for Family Med. v. United States, 456 F. Supp. 2d 1115, 1119 (D.S.D. 2006) (rejecting Government's argument that medical residents are never students as a matter of law).

categorically denies "student" status.[12]  Finally, Congress has not amended the Student

Exclusion since the amended regulations were adopted and therefore has not had an

opportunity to scrutinize them.

The Court finds that the full-time employee exception is invalid because it is

inconsistent with the plain meaning of the statute and is arbitrary, capricious, and

unreasonable.  Accordingly, Mayo is entitled to summary judgment on Count One of its

Complaint.

## II.    Government's Rule 56(f) Request

The Government asserts that it has not conducted any discovery regarding Mayo's

medical program or its medical residents for the tax period relevant to this lawsuit – the

second quarter of 2005.  In particular, the Government argues that <u>if</u> this Court

invalidates the regulations, then it will need to conduct discovery on the second quarter of

2005, and thus opposes Mayo's Motion under Rule 56(f) of the Federal Rules of Civil

Procedure.

"Rule 56(f) allows a party to request a delay in granting summary judgment if the

party can make a good faith showing that postponement of the ruling would enable it to

discover additional evidence which might rebut the movant's showing of the absence of a

---

[12] <u>See, e.g.</u>, Rev. Proc. 98-16, 1998-1 C.B. 403 (explaining that an individual who does not qualify for student-FICA exclusion under the standards applicable to undergraduate and graduate students may qualify on the basis "of all the facts and circumstances."); IRS CCA 200029030 (July 21, 2000) ("determination of the status of [medical residents] as students requires examination of the facts and circumstances . . . A <u>per se</u> position that medical residents are not students within the meaning of § 3121(b)(10) would be inconsistent with the regulations . . . .)" IRS CCA 200212029 (Mar. 22, 2002) ('whether medical residents are students depends upon the facts and circumstances in each case.").

genuine issue of material fact."  Robinson v. Terex Corp., 439 F.3d 465, 467 (8th Cir.

2006) (citing Fed. R. Civ. P. 56(f)); accord Small Bus. Admin. v. Light, 766 F.2d 394,

397-98 (8th Cir. 1985)).  In particular, Rule 56(f) requires the party opposing summary

judgment to file an affidavit with the district court showing what specific facts additional

discovery might uncover.  Dulany v. Carnahan, 132 F.3d 1234, 1238 (8th Cir. 1997).

Thus, the party opposing the motion for summary judgment "may not simply rely

on vague assertions that additional discovery will produce needed, but unspecified,

facts."  SEC v. Spence & Green Chem. Co., 612 F.2d 896, 901 (5th Cir. 1980).

Similarly, a court will deny a Rule 56(f) request if the discovery sought is cumulative or

the party merely "hopes" or has a "hunch" that evidence will emerge.  10B Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 2741(3d ed. 1998).  As

such, if a party fails to carry its burden under Rule 56(f), "postponement of a ruling on a

motion for summary judgment is unjustified."  Humphreys v. Roche Biomed. Labs., Inc.,

990 F.2d 1078, 1081 (8th Cir. 1993).

Here, the Government's affidavit in support of its Rule 56(f) request falls short of

these requirements.  The Government asserts that it needs to conduct discovery to

determine whether material facts are in dispute as to three broad categories: (1) whether

the Mayo residents perform services "in the employ of the Foundation"; (2) whether the

Foundation is a "school"; and (3) whether the Mayo residents are "student[s]" enrolled

and regularly attending classes at the Foundation.  (Pahl Aff. ¶ 14.)  The Government

indicated that it "disputes the facts set forth in [Mayo's supporting] affidavit relating to

each of these three categories for the second quarter of 2005."  (Pahl Aff. ¶ 16.)

However, the facts needed to decide this Motion were subject to discovery in Mayo I.  Also, as part of the 2006 settlement of the 1997-2003 litigation, the Government accepted Mayo's supporting affidavit dated June 10, 2005, which is similar to the affidavit filed by Mayo in support of this Motion.  (Pls.' Reply Mem. at 13-14.)  The affidavit in support of Mayo's Motion is very detailed and indicates that the facts in this case compared to the previous cases between the parties are essentially identical.  (Nelson Aff. ¶¶ 1-37.)  The Government's supporting affidavit does not allege any specific material factual dispute, but merely asserts that discovery "may" help determine if there is a genuine issue of material fact regarding Mayo's medical program or its medical residents for the second quarter of 2005.  (Pahl Aff. ¶¶ 11-13, 17.)

The Court finds that the Government's affidavit contains only conclusory assertions regarding any factual dispute and fails to show what specific facts additional discovery might uncover – it amounts to nothing more than vague assertions that additional discovery will produce needed, but unspecified, facts.  Consequently, the Government has failed to show how discovery will provide rebuttal to Mayo's claims.

The Court also finds that the Government's Rule 56(f) request essentially seeks an advisory opinion before it determines whether discovery is necessary.  Here, the Government argues that it will need to conduct discovery on the second quarter of 2005 only "*[i]f the Court invalidates the regulations*."  (Def.'s Mem. at 50 (emphasis added).)  However, "Rule 56(f) permits a party opposing summary judgment to seek a continuance *and postpone a summary judgment decision* until adequate discovery has been completed." Dulany, 132 F.3d at 1238 (emphasis added).  If the Government truly

believed that discovery was necessary in this case, then it could have asked this Court to postpone its decision.  It did not.  Therefore, the Court denies the Government's Rule 56(f) request.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment (Doc. No. 11) is **GRANTED IN PART** as follows:

   a. Plaintiffs' Motion is **GRANTED** as to Counts One and Four of its Complaint; Plaintiffs are entitled to a refund of FICA taxes withheld and paid in the amount of $1,676,118.06, plus interest; and

   b. Counts Two, Three, Five, Six and Seven of Plaintiffs' Complaint are **DISMISSED WITHOUT PREJUDICE**.

2. Defendant's Rule 56(f) request is **DENIED.**

   **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  August  3 , 2007

s/Richard H. Kyle_____
RICHARD H. KYLE
United States District Judge
